(68 Misc. Rep. 445.)

### PEOPLE ex rel. WIFFLER v. MILLER, City Comptroller.

(Supreme Court, Special Term, Westchester County.   July 15, 1910.)

1. MUNICIPAL CORPORATIONS (§ 887*)—STATUTES—CONSTRUCTION—"DEBT IN-
CURRED AFTER APPROPRIATIONS HAD BEEN EXHAUSTED.

Second-Class Cities Law (Consol. Laws, c. 53) § 79, made any expendi-
ture or the incurring of any debt by a city officer or department in excess
of the amounts appropriated for the fiscal year then current unlawful and
not binding on the city.  Laws 1910, c. 254, § 1, authorizes the city of
Yonkers to create a funded debt by the sale of bonds to the amount of
$40,000, and to apply the proceeds to the payment of any debts and ex-
penses of the city incurred during the fiscal years 1908 and 1909 remain-
ing unpaid after appropriations applicable thereto had been exhausted.
Section 2 required claims for such debts and expenses to be audited as
other claims.  Prior to 1910 an officer of a department, after the exhaus-
tion of all moneys appropriated to the department, incurred a debt for
feed for the horses used in the department.  This claim was duly audited,
but the comptroller refused to pay it.  *Held*, that the claim was for a
"debt incurred after appropriations" applicable to the payment thereof
"had been exhausted," and was within Laws 1910, c. 254, though under
Second-Class Cities Law, § 79, no debt incurred beyond the appropriation
could be a debt of the city in a strict legal sense.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
887.*]

2. MUNICIPAL CORPORATIONS (§ 76)—STATUTES—CONSTITUTIONALITY.

The Legislature, in enacting Laws 1910, c. 254, which recognized claims
which were technically illegal, but morally meritorious, in that the city
had had the benefit of the material charged for, was within the consti-
tutional power of that body.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
181, 687;  Dec. Dig. § 76.*]

Application for a peremptory writ of mandamus by the People of
the State of New York, on the relation of Joseph J. Wiffler, against
Joseph Miller, as Comptroller of the City of Yonkers, in which the
United Taxpayers' Association of the City of Yonkers intervened and
opposed.  Application granted.

Walsh, Wallin & Beckwith, for relator.
Thomas F. Curran, Corp. Counsel, for respondent.
Adrian M. Potter, for intervener.

MILLS, J.  It appears that during the fiscal years 1908 and 1909
certain departments of the city government of Yonkers, including that
of the commissioner of public safety, purchased certain supplies for
city use after having exhausted all moneys appropriated to such de-
partments, respectively.  One of the debts or claims thus incurred by
such commissioner was to the relator herein for feed for the horses
used in the department of such commissioner.  Under section 79 of
the second-class cities law (Consol. Laws, c. 53), which applied to
and governed that city in those years, the making of any expenditure
or the incurring of any debt by a city officer or department in excess
of the amounts appropriated for the fiscal year then current is made
unlawful and invalid to bind the city.  The Legislature of the present

year passed an act, known as chapter 254 of the Laws of 1910, entitled:

"An act to authorize the issuance and sale of bonds of the city of Yonkers, in the principal sum of forty thousand dollars, to provide moneys for the payment of certain debts and expenses of said city, and to authorize the audit of said debts and expenses."

Section 1 of said act authorizes the city of Yonkers to create a funded debt by the sale of bonds to the amount of $40,000, and to apply the proceeds resulting from such sale—

"to the payment of any debts and expenses of said city incurred during the fiscal years nineteen hundred and eight and nineteen hundred and nine remaining unpaid after appropriations applicable to the payment thereof have been exhausted."

It was estimated at the time that the liabilities so incurred by the various departments of the city government, in excess of the appropriations, amounted approximately to the sum of $40,000.

Section 2 of the act provides that the claims for such debts and expenses may be audited as other claims against the city are by law to be audited, and shall not be paid unless so audited.

The city authorities, under such act, have issued and sold the bonds, and have in hand the proceeds thereof, which are sufficient to meet all such claims. The relator's claim has been duly audited, but the comptroller refused to pay the same, because of a protest made to him by the United Taxpayers' Association of the City of Yonkers. Thereupon the relator, upon due notice, applies here for a peremptory writ of mandamus to compel the comptroller to pay his claim. The association has been permitted to intervene and oppose, and briefs have been submitted in behalf of the relator and of the association.

After carefully considering such briefs, and the language and history of the act, viz., chapter 254 of the Laws of 1910, I conclude that the writ should issue. Two questions appear to be presented for determination, viz.: (1) Whether or not such a claim as that of the relator is within the purview of the act; and (2) whether or not that act, if it be construed so as to cover such a claim, is constitutional.

As to the first question, it seems to me that the act was, by its express terms, intended to apply to debts incurred "after appropriations applicable to the payment thereof have been exhausted," and therefore that it does embrace within its benefit the claim of the relator. Except for the words just quoted, I would hold, with the contention of the learned counsel for the association, that the term "debts" in the act must be construed to mean only legal debts of the city, and therefore not to cover the relator's claim, which by the provisions of said section 79 was not a legal debt of the city. Inasmuch as by that section no debt incurred beyond the appropriation could be a debt of the city in a strict legal sense, the express terms of the act of 1910 extend its purpose and benefit to the debts incurred beyond that limit. Indeed, the terms of the act appear to have no other possible meaning, as the clause "remaining unpaid after appropriations applicable to the payment thereof have been exhausted" is an absolute and general limitation, and the balance of the $40,000, if any, after the pay-

124 N.Y.S.—24

ment of such debts, can be used only "as the board of estimate and apportionment may direct."

As to the second question, that of constitutionality, I think that the act of the Legislature, in recognizing such claims, which are technically illegal, but morally meritorious, in that the city has had the benefit of the materials charged for—here, feed used in supporting its horses—was within the constitutional power of that body, within the doctrine of the Court of Appeals in Matter of Borup, 182 N. Y. 222, at page 226, 74 N. E. 838, at page 839, 108 Am. St. Rep. 796. In that case that court held that it was competent for the Legislature to pass an act requiring towns to pay to landowners damages for changes of highway grade previously made, although, when such a change was made, no such liability existed, or could under any law have been imposed or assumed. The opinion of that court in that case said:

"There is no provision of the Constitution that restricts the Legislature from providing for the payment by a municipality of claims against it that are founded in equity and justice and which could have been authorized originally."

Here, in the case at bar, the city of Yonkers was not legally liable to the relator for the feed furnished when it was furnished; but the city had the benefit of such feed, and therefore the relator's claim to be paid by the city therefor is clearly one "founded in equity and justice and which could have been authorized originally" (meaning, doubtless, moral justice and authorized by the Legislature). The doctrine of that court is not, as contended by the learned counsel for the association, limited to claims "where the power exists to create them, but the statutory proceedings are not strictly pursued, or for some reason are informal and defective." This is manifest, because in the Borup Case there was, when the change of grade was made, no power at all by any sort of proceeding to create a liability by the town to the damaged landowner. In that case the counsel for the town urged upon that court such limitation, but ineffectually.

The application or motion for the writ is therefore granted.